————————o————————

No. 4010.

(Court of Appeal, Parish of Orleans.)

WILLIAM DUFRENE & BROTHER, vs. VINCENT DIGREGORIO.

Issues of fact only are involved herein.

Appeal from Civil District Court, Division "A."

Lyle Saxon, for Plaintiff and Appellant.

Jas. T. Nix, for Defendant and Appellee.

ESTOPINAL, J. Plaintiffs sued the defendant to recover the sum of six hundred and sixty-nine dollars and eighty cents ($669.80), averring in their petition that "between the 4th day of December, 1904, and the 25th day of January, 1905, petitioner contracted, sold and delivered unto the said Vincent DiGregorio, defendant, thirty-six thousand two hundred and eighty (36,280) pounds of fish, at the price and sum of *three and a half cents* (3 1-2) *per pound,* which amounted to one thousand, two hundred and sixty-nine dollars and eighty cents ($1,269.80) and that your petitioner has received on account of the said sum six hundred dollars ($600.00), leaving a balance due of six hundred and sixty-nine dollars and eighty cents ($669.80)."

Defendant in his original answer avers that the contract price for the fish with the plaintiff from December 4th, 1904, was fixed at three cents (3 cts. per pound, and admits receipt of twenty-four thousand, four hundred and sixty-five (24.465) pounds of fish, for which he paid plaintiff in cash and merchandise, the sum of seven hundred and twenty-seven dollars and eighty-eight cents ($727.88), leaving a balance due plaintiff of six dollars and seventy cents ($6.70), which defendant tendered.

In a supplemental answer, which discloses no new issue, de-

fendant admits receiving from plaintiff 31,065 pounds of fish, but that 6,600 pounds were shipped by plaintiff *after the latter* had been *notified* not to ship any more fish, and these 6,600 pounds became spoiled and worthless.

Defendant made a further tender of seven dollars and seventy five cents ($7.75) to cover costs of Court up to the time the answer was filled .

We have examined the testimony with especial care, and are unable to discover wherein there is error in the judgment of the District Court.

Questions of fact in the main are involved, and the judge a qua, who saw and heard the witnesses, in clear and concise written reasons gave judgment for plaintiff for six dollars and seven cents (6.07), and assessing costs of Court on plaintiff from the date of tender. From this judgment plaintiff appeals.

The preponderance of the evidence shows that prior to December 4th, 1904, defendant had paid plaintiff at the rate of three and a half cents (3 1-2) per pound for fish; that a final settlement of account was made between plaintiff and defendant on that day, the latter paying the former nine hundred and fifty-nine dollars ($959.00) ; that defendant then notified plaintiff that he could no longer pay three and a half cents (3 1-2), but would hereafter pay three cents (3 cts.). This is abundently shown.

Plaintiff may not have consented in so many words to sell his fish at three cents (3 cts.), but his refusal could have been clearly shown by discontinuing shipment to defendant. The fact that he continued to ship fish to defendant in the face of the latter's refusal to pay more than three cents (3 cts.), was a ratification or an acquiescence which makes the contract complete. The evidence clearly establishes also that some time during December, 1904, defendant notified plaintiff not to ship any more fish, the market at that time not being strong. Plaintiff is shown to have ignored this notice and to have shipped to defendant several thousand pounds of fish, which besides being poorly packed could not be readily disposed of on the market, and finallv spoiled. It is in evidence that the spoiled fish was thrown away.

Plaintiff made these shipments at his peril, and he cannot reasonably complain of the consequences, and fasten liability on the defendant. Counsel for defendant cites authorities in which the Court has held substantially that where the thing furnished was *received* and *used* without objection the vendor is entitled to recover.

The facts here, however, show that notice was given not to ship, and that when shipment of fish came and became *spoiled* and *useless* they were thrown on the garbage and no use made of them.

But says counsel, when a person purchases and has certain articles shipped to him, and he finds the same to be worthless and does not return them, he is bound to pay the price agreed upon .

The authorities seem to support this doctrine, but we very much doubt that its application extends to shipments of rotten fish. The person making such shipment might become seriously involved with sanitary Board and Health · Officers.

Plaintiff contends that the point of shipment, Bayou des Allemands, is only a few miles from the City, and that if not impossible, it was quite improbable that fish, which he claims was properly packed, could have rotted in transit occupying two or three hours.

As we appreciate the testimony it is not the time consumed in transit alone that is to be considered. Plaintiff had notice not to ship fish at that time because the market was glutted.

He nevertheless shipped, and before the fish could be disposed of, it was lost. In shipping against instructions he assumed all risks.

We will not review in detail the testimony given here in view of the very correct statement of those made by the Judge of . the District Court, which we adopt as a part of this opinion. Equal justice has been done the parties by the judgment appealed from, and we discover no reason to disturb it. The reasons for and decree of the Lower Court read as follows:

"The evidence shows that when the defendant settled with the plaintiff on December 5th, 1904 and paid him $959, he stated to the plaintiff that he would not take more fish from him at

3 1-2 cents per pound, but would pay only at the rate of 3 cents.

"The entire amount of fish, for the price of which plaintiff is here suing, was shipped after December 5th, 1904, and it follows that plaintiff's charge of 3 1-2 cents per lb. cannot be allowed.

"It is positively proved that, on December 21, 1904, owing to the glutted market here, the defendant notified all of his fish suppliers or furnishers, to ship no more fish until further orders. The plaintiff was then notified on that date, and he received the notice, as is positively proved by Mr. Patrick, a disinterested witness, who received the message and personally delivered it to the plaintiff. The plaintiff denies this, but the evidence is absolute and convincing that he did receive the notice.

"Contrary to this notice and order he shipped, and the fish, when received, could not be used, and spoiled on defendant's hands. It is said in agreement, defendant should have shipped them back. There is evidence that they were not well packed in ice though I do not thus find, but be this as it may, so perishable an article as buffalo fish, packed in barrels, would hardly stand reshipment, but even were this practicable, the fact that they were shipped against the positive orders of defendant, *not to ship*, on the very day and days following, the delivery of that order to him, in my judgment, cuts plaintiff off from this agreement.

The evidence shows that the defendant was unable to make any disposition of the fish, shipped contrary to his orders, and there is no warrant in law, or justice, under such conditions of fact supporting this part of plaintiff's claim.

"Defendant had notified him that owing to the condition of the market, fish could not be sold, and had ordered him not to ship until further notice. When he shipped in violation of this order he took the risk, and when defendant was not able to use or dispose of them and shipment back to plaintiff was out of the question , the chances that he (plaintiff) took, went against him, and the loss was his own. Correcting the plaintiff's account to conform to the foregoing finding of fact, the defendant claims that in money and merchandise, he has paid the plaintiff, before

511

suit was brought, in full, except a small balance of $6.07, which, with the costs of Court, $7.75, he deposited in Court and tendered to the plaintiff.

"The two checks offered in evidence prove the money payment ($500, $100) $600, as pledged by defendant.

"The burlaps and barrels, furnished the plaintiff, by the defendant, are proved as claimed and the plaintiff, after some considerable pressing, admitted defendant's claim to be correct, but urged that defendant must first pay him the whole amount of his bill for fish, and then he would pay defendant for his barrels and burlaps.

"The defendant testified that the settlement was to be made by crediting the amount due for the barrels and burlaps, as the fish account, and that he and plaintiff has always settled that way. I believe the defendant, and he is corroborated by the probabilities of the case, as well as by the prior course of dealing. He is a fish dealer, and not a dealer in barrels and burlaps. No doubt, for convenience he proceeded and furnished these things, which plaintiff needed for shipments of fish and oysters and with this understanding that their price be credited on plaintiff's bill for fish I think the payment in cash and merchandise was well pleaded, and that there was no need for the technical plea of compensation tendered under such circumstances.

I do not find it necessary to discuss the occurance at defendant's store, on the occasion of the visit of plaintiff's counsel, for it is to my mind that defendant owed the plaintiff only the trifling balance of $6.07. That there was misunderstanding and that all the witnesses are honest in their version of what occurred, is all that I find. On December 4th, the defendant had paid plaintiff $959 in full; on January 5th he had paid him $500; and on April 20th he paid $100 more, leaving after crediting the amount due for barrels and burlaps which plaintiff admits correct in amount, only $6.07 Resipsa Loquitue.

Judgment must go recognizing the plaintiff's rights to the $6.07 and the $7.75 costs, total $13.82 deposited in Court, and awarding him that sum ($13.82), as the total due him, principal and costs, and dismissing his suit otherwise at his cost, and in

defendant's favor, for all costs by him incurred since the date of the said tender and deposit in Court.

Judgment affirmed.